IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JUDY WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:06-cv-400 |
| | ) |
| REDFLEX TRAFFIC SYSTEMS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## JOINT RESPONSE OF DEFENDANTS REDFLEX TRAFFIC SYSTEMS, INC. AND CITY OF KNOXVILLE, TENNESSEE, TO PLAINTIFFS' MOTION TO RESTRICT PARTY EXTRAJUDICIAL COMMENTS

COME Defendants City of Knoxville, Tennessee and Bill Haslam as Mayor of the City of Knoxville, Tennessee (the "City"), Officer Michael L. Sullivan, Captain Gordon Catlett, Knoxville City Council, Redflex Traffic Systems, Inc. ("Redflex"), and Joseph Bernard (collectively referred to as the "Defendants"), by counsel, and jointly file this response to Plaintiffs' Motion to Restrict Party Extrajudicial Comments (the "Motion"). The Motion must be denied because the requested relief would present a constitutionally invalid and unjustifiable prior restraint on the free speech rights of the Defendants. The broad scope of the desired prohibition, which is not even limited to comments related to this lawsuit, would effectively deprive the Defendants of the right even to <u>mention</u> the subject red light program in any forum whatsoever.

## INTRODUCTION

This case involves a meritless challenge to the legality of the City's recently implemented red light enforcement program. The program involves the installation of cameras at a handful of heavily trafficked intersections in Knoxville. The cameras photograph vehicles

that run red lights located at those intersections. Once identified, the owner of the offending vehicle is mailed a citation for violating the City's traffic ordinance. Plaintiff challenge, which is detailed in a one hundred page Amended Complaint, represents nothing more than Plaintiff's frustration at being caught and fined accordingly.

In an attempt to further burden Defendants (and without showing any past actions that even remotely justify such a request), Plaintiff now asks this Court to enter an order "directing defendants and agents of the defendants [to refrain] from engaging in extrajudicial comments through press releases or other official or public speaking appearances, or any other conversation or writing, designed to influence any potential jury member as to any aspect of the matters contained within the Amended Complaint of the Plaintiff." (Doc # 24). Like the lawsuit itself, Plaintiff's present request has no basis in law or fact and, therefore, should be summarily denied.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. The Order Requested by Plaintiff Would Represent an Unconstitutional Prior Restraint On the First Amendment Rights of the Defendants

The order requested by Plaintiff has serious constitutional implications because, if granted, it would impose a prior restraint on the free speech rights of Defendants. "The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" Alexander v. United States, 509 U.S. 544, 550 (1993) (citations omitted). As explained by the Alexander court, "[t]emporary restraining orders and permanent injunctions - i.e., court orders that actually forbid speech activities - are classic examples of prior restraints." Id.

As observed by the Supreme Court, the relief requested is basically intolerable: "'[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.'" Tory v. Cochran, 544 U.S. 734, 738 (2005) (emphasis added)

2

(quoting Nebraska Press Assn. v. Stuart, 427 U.S. 539, 559 (1976)). Due to this concern, a prior restraint should be granted only with great care and after much deliberation because, "[w]hen it comes to placing prior restraints on speech, we believe that courts should proceed with great hesitancy. And after considering all of the evidence, courts should hesitate again." In re Dow Corning Corp., 227 B.R. 111, 127 (Bankr. E.D. Mich. 1998).

In the Sixth Circuit, a court order that represents a content-based restriction upon the free speech rights of parties to civil litigation, such as the one requested by Plaintiff, will undergo a strict scrutiny analysis: "[A]s the authorities demonstrate, any restrictive order involving a prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of First Amendment rights will interfere with the rights of the parties to a fair trial." CBS v. Young, 522 F.2d 234, 241 (6th Cir. 1975) (emphasis added). To use common parlance from our constitutional jurisprudence, such an order must pass the "clear and present danger" test. United States v. Ford, 830 F.2d 596, 598 (6th Cir. 1987); Young, 522 F.2d at 236, 242; Karhani v. Meijer, 270 F. Supp. 2d 926, 933 (E.D. Mich. 2003).

Under the "clear and present danger" standard, "[t]he restraint, to meet judicial approval, must pose a clear and present danger, or a serious or imminent threat to a protected competing interest."[1] Young, 522 F.2d at 238 (emphasis added). As explained by the Sixth Circuit in Ford, to justify a prior restraint, the "threat" must "be specific, not general. It must be much more than a possibility or a 'reasonable likelihood' in the future. It must be a 'serious and imminent threat'

---

[1] Significantly, Plaintiff claims that the "competing interest" deserving of protection here is her "right" to an unbiased jury. Courts have addressed this argument in the past and observed that, unlike criminal defendants, civil plaintiffs simply do not enjoy the right to an "impartial" jury. Wachsman v. Disciplinary Counsel, No. C-2-90-335, 1991 WL 735079, at 10 (S.D. Ohio Sept. 30, 1991). Based on this conclusion, the Wachsman court stated, "[T]his impartial jury requirement in criminal proceedings justifies restrictions on attorney speech in criminal litigation which would not be justified in civil proceedings." Id. at 10. Additionally, this rationale, in part, led the court in Karhani v. Meijer to conclude that the "rights" associated with a jury trial cannot be used to impose a prior restraint upon the free speech rights of civil litigants. 270 F. Supp. 2d at 933.

3

of a specific nature, the remedy for which can be narrowly tailored in an injunctive order." 830 F.2d at 601. If a viable, less restrictive alternative is available, a prior restraint is unjustified because "[t]he restraint must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms." Young, 522 F.2d at 238 (emphasis added). Plaintiff's requested order simply cannot meet the requirements of this exacting standard.

### A. Plaintiff Cannot Prove the Existence of a "Serious or Imminent" Threat

Based upon the early stage of this lawsuit and the absence of any evidence of a "specific" threat, Plaintiff and has demonstrate and cannot demonstrate facts showing a "serious or imminent" threat to her non-fundamental right to a jury trial. In a case analogous to the one presented here, the United States District Court for the Eastern District of Michigan denied a similar request based in large part on the fact that the threat to the plaintiff's right to a fair trial was not imminent. Meijer, 270 F. Supp. 2d at 933-34.

At issue in the Meijer case was an "altercation which took place . . . [at the defendant's] supermarket gas station in Fraser, Michigan" of which the plaintiffs complained they were subjected to racial bias and pejorative comments based on ethnicity. As explained by the court, "[t]he event has spawned leafleting by Plaintiffs and media stories." The defendants moved the court to enter an injunction barring the plaintiffs "from distributing leaflets which allegedly contain 'inaccurate, incomplete and misleading information' concerning" the altercation. Id. at 927. More specifically, the plaintiffs, along with "third-party organizations," were distributing leaflets that read, "You Arabs get out of here, we don't want to serve you guys . . ." – a statement that was allegedly made to plaintiffs by an employee of the defendant. Id. at 929 (ellipses in

original). One of the chief arguments proffered by the defendants in support of its request for a prior restraint was "the leaflets interfere with its ability to obtain a fair trial in this Court." Id.

The court refused to grant the injunction, holding that it would constitute an unconstitutional prior restraint on the plaintiffs' free speech rights. Id. Central to the court's determination was its opinion that there was no immediate threat to the defendants' right:

> The litigation is in its infancy; it is doubtful that the leaflets, at least during the present time period, will have any lasting affect on the jury pool for a trial that is many months in the future. Furthermore, while the case has generated media publicity-- newspaper articles, and television and radio discussions--the sporadic nature of the coverage does not at this time appear to pose a risk to the jury pool . . . . Nothing in the current record before the Court compels the conclusion that Meijer will be unable to receive a fair trial in the future.

Id. at 933-34.

This case, like the one examined by the Meijer court, is in its infancy and the media reports on the red light enforcement program are sporadic at best. At this time, no trial date has been set. In fact, the parties have yet to file responses to Plaintiff's Amended Complaint. It is improper to assume that occasional statements made by Defendants concerning "any aspect of the matters contained within the Amended Complaint" will be inappropriate or that it will have some prejudicial impact on jurors that will not be impaneled for months.

Additionally, when compared to the facts in Meijer, general comments about the red light enforcement program do not present any threat to the fair administration of justice much less a "specific" threat. In Meijer, the court rejected the defendant's request to enjoin the plaintiffs from distributing leaflets in which the plaintiffs <u>directly and personally attacked</u> the defendant about the matters at issue in the lawsuit. Meijer, 270 F. Supp. 2d at 929. The court

5

acknowledged that the case had already received media attention, but nonetheless rejected the defendant's request. Id.

Here, it is not even alleged that the Plaintiff has been criticized or that the lawsuit (however baseless in fact) has been mentioned by the City or Redflex in publications issued by the Defendants. All that are cited are general media articles and a neighborhood watch notice, which do nothing more than refer to the red light enforcement program in general terms. This lawsuit is not mentioned at all. It is dubious to suggest that general media attention about the program would have any serious impact on the *venire*. Indeed, it is impossible to imagine how the benign reports and statements attributed to the Defendants in the exhibits cited by Plaintiff amount to a "serious or imminent" and "specific" threat that could justify the issuance of a prior restraint.

**B.     There is No Relief Available to Plaintiff that Could Pass the "Narrowly Tailored" Requirement**

Finally, the "narrowly tailored" element of the "clear and present danger" standard mandates that this Court deny the requested relief. As explained by the *Young* court, a prior restraint cannot issue unless "narrowly tailored" relief is available and unless no alternative prophylactic measure is available that would have a lesser impact upon the parties' free speech rights. Young, 522 F.2d at 238. In short, the relief requested by Plaintiff must be denied because it is both overly broad and because acceptable, less intrusive alternatives are available.

On its face, the relief specifically requested by Plaintiff is clearly overbroad. The order, if entered, would bar the defendants -- government and non-government entities and their employees as well as "Unknown" defendants -- from commenting in any way upon a an effective governmental program. In effect, the order would forbid the City from participating in any public discourse related to the red light enforcement program, generally, and would prohibit

6

Redflex from marketing its product and services. Certainly, such a broad prohibition fails to meet the "narrowly tailored" requirement of the Young case.

Additionally, district courts have considerable discretion in controlling the selection of the *petit venire*. Ford, 830 F.2d at 599; Meijer, 270 F. Supp. 2d at 934. In light of this fact, the *Ford* court recognized that a district court might require a change of venue, the sequestration of the jury, or a searching *voir dire* examination of the jury to alleviate the threat posed of a tainted jury. Ford, 830 F.2d at 599. Specifically, the Meijer *court* based its decision to deny a prior restraint in large part on the fact that the "potential prejudice to the jury pool can be evaluated by vigorous *voir dire*." Meijer, 270 F. Supp. 2d at 934. These same procedural safeguards are available in this case, if, in the future, Plaintiff can actually demonstrate a specific threat to the jury pool. Therefore, any prior restraint upon the Defendants' free speech rights would be constitutionally invalid, and Plaintiff's request should be denied.

## CONCLUSION

The order Plaintiff requests cannot pass constitutional muster under the strict scrutiny analysis. Therefore, Plaintiffs' Motion to Restrict Party Extrajudicial Comments must be denied.

DATED this 26th day of January, 2007.

        Respectfully submitted,

        /s/ Ronald E. Mills
        W. Morris Kizer (BPR #001571)
        Law Director
        Ronald E. Mills (BPR #013348)
        Assistant City Attorney
        City of Knoxville
        400 Main Street
        P.O. Box 1631
        Knoxville, Tennessee 37901-1631

*Attorneys for Defendants, City of Knoxville, Bill Haslam as Mayor of the City of Knoxville, Captain Gordon Catlett, and Officer Michael L. Sullivan*

/s/ Michael S. Kelley
Michael S. Kelley (BPR #14378)
Matthew M. Scoggins (BPR #23126)
BASS, BERRY & SIMS PLC
1700 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37902
(865) 521-6200

*Attorneys for Defendant, Redflex Traffic Systems, Inc. and Joseph Bernard*

/s/ Charles W. Swanson
Charles W. Swanson (BPR #006716)
SHEPPEARD, SWANSON &
  MYNATT, PLC
616 W. Hill Avenue
P.O. Box 2149
Knoxville, TN 37902

*Attorney for Knoxville City Council*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Joint Response of Defendants Redflex Traffic Systems, Inc. and City of Knoxville, Tennessee, to Plaintiffs' Motion to Restrict Party Extrajudicial Comments has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ Michael S. Kelley

6314733 10                                                                9

Case 3:06-cv-00400   Document 33   Filed 01/26/07   Page 9 of 9   PageID #: <pageID>