# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| JUDY WILLIAMS, )<br>)<br>      Plaintiff  )<br>)<br>    v.               )<br>)<br>REDFLEX TRAFFIC SYSTEMS, )<br>INC., *et al.*,         )<br>)<br>      Defendants  ) | No. 3:06-cv-400<br>(Phillips/Inman) |

## **MEMORANDUM OPINION**

This is an action brought pursuant to 42 U.S.C. § 1983 and under state law in which plaintiff challenges a $50 traffic ticket she received under the Knoxville Red Light Photo Enforcement Program. Currently pending are motions for summary judgment of defendants [Court Files #34, #36]. Also pending are defendant's motion to amend/revise scheduling order [Court File #64], plaintiff's motion for consideration of proposed termination dates for inclusion in scheduling order [Court File #66], plaintiff's motion for relief from improper docket alterations [Court File #71], and plaintiff's motion to strike [Court File #89]. Although it appears that several provisions of the "Program" may violate U.S. or Tennessee constitutional provisions, because plaintiff failed to pay her fine and failed to request a hearing as provided, she lacks standing to challenge the Program. Accordingly, defendants' motions for summary judgment will be granted, and this action will be dismissed.

I.

*Motion to Strike*

Plaintiff has moved to strike the affidavit of Richard Wingate filed with defendants' supplemental memorandum in support of defendants' motion to dismiss. Plaintiff argues that Wingate's affidavit is speculative and not based on personal knowledge. Plaintiff's motion is without merit. In his affidavit, Mr. Wingate states that he is the City Court Administrator, that his staff sets the hearing dates, and that he sends out letters advising each defendant of his or her right to a hearing. Thus, the court finds that Mr. Wingate's affidavit is based upon his personal knowledge of the procedures available to someone who has received a citation like the one at issue here. Accordingly, plaintiff's motion to strike [Court File #89] is DENIED. Next, the court will address the merits of defendants' motions for summary judgment.

II.

*Summary Judgment Motion*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the

facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

III.

*Knoxville's Red Light Photo Enforcement Program*

On February 1, 2005, the defendant City of Knoxville enacted an ordinance known as the "Automated Enforcement" ordinance, codified at Knoxville Code § 17-210. The ordinance purports to adopt for the City a traffic control photographic system which would enable the City to make an electronic image of the license plate of motor vehicles

3

running red lights at certain intersections in Knoxville. The ordinance provides that notice of the violation shall be sent to the owner of the vehicle and a $50 "civil penalty"[1] assessed, except when the owner "can provide evidence that the vehicle was in the care, custody, or control of another person at the time of the violation."

To carry out the ordinance, on December 8, 2005, the City of Knoxville signed a contract with defendant Redflex, an Australian corporation which operates and maintains such photo enforcement programs in more than 100 cities in the United States. The obligations of Redflex are set out in a contract between Redflex and the City. The contract provides that Redflex is an independent contractor of the City. Its obligations are to install and maintain the Redflex Photo Red Light System at specified intersections within the City and to provide other services to the City in connection with the system.

According to the amended complaint, Redflex is obligated to retain data, select, process, and assemble the data for review, issue and mail citations, and print and mail

---

[1]By statute in Tennessee, running a red light is a Class C misdemeanor, or in other words, a crime. *See* T.C.A. § 55-8-109. In at least nine states (California, Colorado, Delaware, Hawaii, Maryland, New York, North Carolina, Oregon and Virginia) and the District of Columbia, the state legislatures have passed legislation permitting the use of red light cameras in at least some communities. *See* http://www.dps.state.mn.us/ots/Laws Legislation/hot_topics.asp. In each of these states, the legislature passed enabling legislation authorizing municipalities to implement automatic traffic law enforcement systems and often characterized the resulting fines as "civil." *See N.C. Gen. Stat.*, § 160A-300.1. Defendants do not suggest that the Tennessee legislature has created such enabling legislation. Rather, Knox County appears to have simply adopted it on its own.

notices. Redflex has provided training to personnel of the City. Redflex employees review the images taken from the camera or images demonstrating that a particular motor vehicle ran a red light. If the license tag number is visible, then the Redflex employee provides an image of the violation which demonstrates the violation and clearly shows the license number of the vehicle. Still photos taken from the video showing the violation are sent to the Knoxville Police Department where an officer views the snapshot(s) and sends the citation to the registered owner of the vehicle. Under the Program, the fine can be paid by mail to Redflex. It is not clear from the record what portion of the fine is retained by Redflex for its services, but plaintiff maintains that it is 85%. None of the parties dispute that Redflex keeps something more than 50% of the proceeds and retains the remainder of the proceeds in a trust account for the City.

On August 8, 2006, plaintiff's vehicle went through the intersection of Western Avenue/West Summit Hill and Henley Street and was photographed by Redflex equipment. Plaintiff subsequently received directly from Redflex a citation claiming that she had violated Knoxville Code § 17-210. The citation contained a facsimile signature of defendant Officer Sullivan. The instructions accompanying the citation offered the plaintiff several options which can only be described as a Hobson's choice. First, plaintiff could by check or money order pay the $50 fine by mail to the "Knoxville Red Light Photo Enforcement Program." Cash payments would be accepted in person at the Knoxville City Court. Should the plaintiff elect one of these first options, the citation provides that "[n]o record of this violation will

5

be sent to your insurance company or to the Department of Public Safety Division of Motor Vehicles."

Second, plaintiff was afforded the opportunity to complete an Affidavit of Non-Responsibility stating that she was not driving the vehicle at the time of the violation and naming the driver at the time. The citation also has boxes where the owner can check that the vehicle was sold prior to the date of violation to a person named below, or that the vehicle or license plate(s) were stolen at the time of the violation.

Third, the owner is allowed to schedule a hearing at Knoxville City Court. The citation notifies the owner that "[t]o schedule a hearing you will be assessed a court processing fee of $67.50." At the hearing on these motions, counsel for the defendants conceded that the imposition of this processing fee was a "mistake". Plaintiff refused to select any of these options, failing to pay the $50 fine or to request a hearing. It also appears that if the vehicle owner chose a hearing and lost, then notice of the violation would be sent to her insurance company and the Department of Transportation. The time for requesting a hearing in this case has long passed.

The court allowed the parties to conduct limited discovery and submit supplemental briefs to address the hearing and appeals process available to persons ticketed under the Knoxville Photo Enforcement Program. Richard Wingate, the City Court

Administrator, submitted an affidavit which states that the administrative office of the Municipal Court was open during the relevant time period or that trials were set on request of persons charged with violations. Between August 6, 2006 and October 31, 2006, the City Court's administrative office was regularly open to the public, and a number of persons requested and received dates for trials relating to red light citations. Mr. Wingate further stated that upon request, plaintiff would have been given a trial date without any requirement to pay a charge or fee. At trial, plaintiff would have had a right to contest the citation for her red light violation before the Municipal Judge. She would have had a right to be represented by counsel and to call witnesses. In addition, had plaintiff been found liable for violating the ordinance, she would have had a right to appeal the judgment to the Knox County Circuit Court. If plaintiff could not afford the appeal bond, she would have had the right to file a pauper's oath. Finally, if dissatisfied with the decision of the Circuit Court, plaintiff would have had a right to appeal the decision to the Tennessee Court of Appeals.

Plaintiff's amended complaint alleges the following theories: (1) constitutional and statutory violations under 42 U.S.C. §§ 1983 and 1988; (2) violation of the Tennessee Open Records Act; (3) outrageous conduct or intentional infliction of emotional distress; (4) negligence or gross negligence under the Governmental Tort Liability Act; (5) civil conspiracy; and (6) vicarious liability. Plaintiff's initial claim is that the City and Redflex denied her procedural due process violative of the Fourteenth Amendment and the Tennessee Constitution.

7

In order to state a claim for denial of procedural due process, a plaintiff must first establish that she has been deprived of a property or liberty interest. *See Board of Regents of State College v. Roth*, 408 U.S. 564, 569 (1972). In this case, the property interest at issue presumably lies in the $50 "civil penalty" that was assessed against her. However, before plaintiff can pursue a challenge to the procedures provided by the defendants, she must satisfy the requirements of Article III of the Constitution which "limits the jurisdiction of federal courts to actual 'cases' or 'controversies'". *Star Scientific, Inc. v. Beales*, 278 F.3d 339, 358 (4th Cir. 2002). This standing requirement "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To establish standing, a party must establish, as 'the irreducible constitutional minimum," three elements: (1) that she has suffered an injury in fact that is both concrete and particularized and 'actual or imminent, not conjectural or hypothetical'; (2) that there is a causal connection between the injury and the conduct complained of, *i.e.*, the injury is 'fairly traceable' to the challenged action; and (3) that it is 'likely ... that the injury will be redressed by a favorable decision.'" *Id.* at 560-61.

The defendants contend that because the plaintiff has failed to use the process provided to her, she cannot show that she has suffered injury because of the insufficiency of the process provided. The court agrees. Plaintiff does not have standing to challenge the conduct of defendants because she has failed to show that "[she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant

... and that the injury is likely to be redressed by a favorable decision. ... ." *Shavitz v. City of Highpoint*, 270 F. Supp. 2d 702, 710 (M.D. N.C. 2003). It is undisputed that plaintiff did not seek a hearing in Municipal Court. Because plaintiff failed to utilize the hearing mechanism, she has not suffered a concrete and particularized injury as a result of the allegedly deficient process and therefore has no standing to challenge it. *Id.*

Although this plaintiff lacks standing, the court is constrained to observe that the Red Light Photo Enforcement Program raises numerous federal constitutional questions.[2] For example, in *Minnesota v. Kuhlman*, 729 N.W.2d 577 (Minn. 2007), the Supreme Court of Minnesota held that a Minneapolis ordinance allowing Redflex to operate its red light system conflicted with Minnesota criminal statutory provisions which imposed a uniformity of application of the criminal laws throughout the state. Basically, the way in which the citations were issued impermissibly shifted the burden of proof to the defendant to show that she was not driving the car at the time of the violation. Although the Minnesota Supreme Court relied only on state law in overturning the red light ordinance, there are obvious due process considerations existing where the state is allowed to shift the burden of proof in a

---

[2]The questions raised have implications beyond those raised with respect to stoplights. Redflex and other private companies are already using similar technology to identify speeders in multiple American cities. Recently Redflex unveiled its latest technology designed to catch motorists who do not come to a complete stop at stop signs which is now being used by the City of Los Angeles. *See* www.thenewspaper.com/news/17/1742asp. These advances raise the Orwellian spectre of a future where traffic control is regulated by a corporate "Big Brother."

criminal case on one of the elements of the crime to the defendant. The key issue which must be resolved in these cases is whether the penalty imposed is civil or criminal. *Compare Shavitz v. City of Highpoint*, 270 F. Supp. 2d 702 (M.D. N.C. 2003), *with Kuhlman*, 729 N.W.2d 577 (Minn. 2007). If the penalty is indeed criminal, then a panoply of federal constitutional rights, including rights to confrontation and rights against self-incrimination, arise. However, this plaintiff simply lacks standing to raise them.

IV.

*Plaintiff's Claim Under the Fair Debt Collection Practices Act*

Finally, plaintiff claims that the citation mailed to her was in violation of the Fair Debt Collection Practices Act (FDCPA). Liability under the FDCPA can arise only where it meets the definition of the term "debt" as being

> any obligation of a consumer to pay money arising out of a transaction in which money, property, insurance, or services which are the subject of a transaction are primarily for personal, family or household purposes. ...

15 U.S.C. § 1692a(5). Such a "debt" exists only when it arises out of a voluntary commercial or business transaction between the parties. *Hawthorn v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371-72 (11th Cir. 1998); *Mabe v. GC Services Limited Partnership*, 32 F.3d 86, 88 (4th Cir. 1994); *Staub v. Harris*, 626 F.2d 275, 278 (3rd Cir. 1980).

Plaintiff likens this case to *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004), where a debt collector sought to obtain more money for court costs after the underlying obligation had been paid, and the Seventh Circuit held that this collection action could violate the Act. However, *Shula* is clearly distinguishable. In *Shula*, the debt in question "arose out of" the debt owed to a doctor for medical services. Hence it fell within the definition of a debt under 15 U.S.C. § 1692a(5). The Seventh Circuit held:

> There is no doubt that the defendants' claim for the payment of costs by [the debtor] was 'incidental' to [the debtor's] alleged debt to the doctor. Had it not been for the suit against [the debtor] to collect the debt he owed the doctor, no claim for costs would have arisen.

*Id.* at 493. Because the citation in this case was not an attempt to collect a "debt," as defined in the Act, defendants are entitled to summary judgment on plaintiff's claim under the FDCPA.

V.

*Conclusion*

In light of the foregoing, defendants' motions to dismiss or for summary judgment [Court Files #34, #36] are GRANTED, and this action DISMISSED. Accordingly, defendants' motion to amend or revise scheduling order [Court File #64], plaintiff's motion for consideration of proposed termination dates for inclusion in scheduling order [Court File #66], and plaintiff's motion for relief from improper docket alterations [Court File #71] are

DENIED AS MOOT. Plaintiff's motion to strike the affidavit of Richard Wingate [Court File # 89] is DENIED.

Order accordingly.

*s/ Thomas W. Phillips*
UNITED STATES DISTRICT JUDGE
